## THE FRANCIS KILLIAN, JR.

### THE CHIPPEWA.

### KILLIAN v. W. E. HEDGER TRANSP. CORPORATION.

#### No. 15038.

District Court, E. D. New York.
Feb. 10, 1939.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan and Charles F. Welch, both of New York City, of counsel), for libelant.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for claimant.

BYERS, District Judge.

The libelant's barge "Francis Killian, Jr.", sustained damage while in tow, west-bound, to the claimant's tug "Chippewa", on June 11, 1936, at or near lock 6 in the New York State Barge Canal.

That the tug caused the damage is not in dispute. Whether she should be held liable depends upon the contract between the claimant, which was operating the tug, and the libelant.

The latter had sought an engagement of his vessel at the claimant's office during April of 1936, and his inquiry was, in effect: "Will you be able to use my boat this year?"

It is undisputed that libelant's barge had been operated by claimant during the seasons of 1933, 1934 and 1935, which explains the call and the inquiry.

No immediate arrangement was made, but the claimant's vice-president, who talked to libelant at this time, says that he pointed out that several barge owners preferred a 60%–40% basis of compensation rather than a per-diem rate for charter-hire, and that he delivered to libelant a copy of the former form of agreement for his information.

Such was the contract for the season of 1933, while in 1934 and 1935 payment was made at the daily rate.

The reason why the libelant was asked to think over the desired basis of charter-hire was that, while in April there was no immediate requirement for his vessel, the probability was that there would be soon, and in the meantime he was asked to decide which form of compensation would be preferred by him.

He denies that he received such a contract form, but for reasons presently to be stated, his testimony on that subject is not convincing.

On the morning of June 1, 1936, Cowan, the claimant's vice-president, got Killian on the telephone at a pier at the foot of Columbia Street, Brooklyn, where his barge was lying, and offered to hire the barge, loading to start that day. This was agreeable to Killian, who was asked to call at claimant's office to sign a contract; due to the presence of inspectors on the barge at the time, Killian said he could not come at once, and suggested that his signature to a contract was not necessary at once, and that he could be relied upon to sign at an early date, in view of the past relations of the parties. Under this assurance, the loading proceeded; the voyage was begun, and the damage inflicted—all without any written contract between the parties.

If a contract had been entered into in the form said to have been presented to Killian in April, calling for a 60%–40% division of the net voyage revenue, it would have contained the following under the head of "Barge Owner warrants to":

"(g) Provide own insurance on hulls, if any.

"(h) Hold the W. E. Hedger Transportation Corporation and/or any tug or vessel owned and/or operated and/or employed by said Company, entirely free and harmless from all liability for damage, loss or expense to the barges named herein, irrespective of how said damage or loss occurs or whether or not it is due to the negligence of the Company and/or any tug or

vessel owned, operated or employed by the Company."

If it had been according to the daily hire form employed in 1934 and 1935, the following paragraph would have been operative:

"(5) Said barge is deemed to be fully insured by the owner for navigation of the waters specified herein by a hull policy covering against perils of navigation and transportation, and the usual marine risks; and neither the charterer nor any tug or vessel owned or operated by the charterer shall be liable for any loss, damage, or expense arising from any cause, risk or peril within the purview of such a policy, irrespective of how it occur or whether or not it is due to negligence of the charterer and/or any tug or vessel owned or operated by the charterer."

It appears therefore that, under either contract, the owner would have had no claim against the tower or the towing vessel, by reason of the damage to his vessel described in the libel.

The question for decision is whether the parties may be deemed to have contracted themselves into a relation which embraced non-liability on the part of the towing vessel, even though there was no written agreement between them.

One way to seek an answer to the query is to see how the libelant viewed the situation before instituting this cause. (The libel was filed September 4, 1936.)

Under date of July 22, 1936, the libelant's fourteen year old daughter wrote to the claimant in her father's name, as follows:

"July 22, 1936.

"Mr. W. E. Hedger
    "120 Wall St.
    "New York City, N. Y.
"Dear Sir:

"I am writing to you in reference to my up and down frieghts *₄which have not as yet received from you.

"I was over to the office to see you but you weren't in.

"I think, in fact I know I'm sure the money belongs to me. I have bills sky high here to pay. And they won't wait. And I have to live my-self * you know.

"I received *information* from *important authories* * that you cannot hold my money. You know I earned it and its mine. You received your 60% alright and I don't see where you have any right to hold it on me.

"You may say I wasn't working for you, how is it then that you received your 60%. I must have been working for you then. But since I received the damge * you say I'm not working for you. How's that?

"I'm to * busy to go over to see you at present so *please* send the 40% per cent that is coming to me on the up and down frieghts * *right away*.

"Mr. William Killian
        "257 Eckford St.
            "Brooklyn, N. Y."

* Sic.

The foregoing is in evidence as having been written with her father's authority. So much was conceded, but without the concession, such would have been the finding.

It thus becomes clear that the libelant thought he was operating under a 60%–40% division of net voyage revenue, although nothing was said in the telephone conversation between Cowan and himself on that subject.

Killian testified at the trial that he would not have signed a contract for the 1936 season containing either of the clauses above quoted.

The difficulty in relying upon that testimony lies in the absence of anything in Killian's version of the telephone conversation with Cowan to that effect; if there had been then present in his mind the purpose which he announced on the trial, it seems obvious that he would have said something about it. The antecedent relations of the parties were such that so important a departure from the contractual status—if in fact contemplated by Killian—would have been insistent in utterance. Good faith required so much.

The exoneration clause was no new or strange incident of the contractual relation of the parties, under either form of hiring, and it must be concluded that Killian put his barge under that form of charter, intending to execute the written document as soon as circumstances permitted; or that he entered into the 1936 operation upon a hazy and nebulous kind of quantum meruit basis, which is inconsistent with the letter above quoted.

Since the latter conclusion is repelled by the testimony, it follows that the libelant must fail, and it is so concluded.

Libel dismissed, but without costs.

Settle decree, and findings if desired.